# **AFFIDAVIT**

I, Matthew J. Godwin, having been duly sworn, hereby depose and state as follows:

1. I have been a Special Agent with the U.S. Department of State, Diplomatic Security Service ("DSS") since January 2017. I completed a training program in conducting criminal investigations at the Federal Law Enforcement Training Center in Brunswick, Georgia and the DSS Basic Special Agent Course in Dunn Loring, Virginia. I hold a Bachelor of Arts degree from the Ohio State University and a Master of Arts degree from Simon Fraser University. As part of my official duties, I investigate the fraudulent acquisition, production, and misuse of United States and foreign passports, United States visas and identity documents associated with the procurement of U.S. passports and visas.

2. I make this affidavit in support of a criminal complaint charging John Doe, a.k.a. "Nene Feliz," with knowingly submitting false statements in an application for a U.S. passport in violation of 18 U.S. C. §1542, specifically, by knowingly using the personal identifiers and biographical information, including place and date of birth, of J.E.D-O., a real person. The offense occurred on or about October 22, 2017. The true identity of John Doe, a.k.a. "Nene Feliz," is unknown to law enforcement.

3. The information set forth in this affidavit is based on information obtained from the Boston Passport Agency, the Miami Passport Agency, commercial and law enforcement databases, and my own investigation. This affidavit does not contain all of the information known to me but rather only that information sufficient to establish probable cause in support of a criminal complaint and arrest warrant.

### 2017 Passport Application

4. On October 22, 2017, an applicant purporting to be J.E.D-O. executed a Form DS-11, Application for U.S. Passport, at the Fort Point Station Post Office in Boston, Massachusetts. As proof of citizenship and identity, respectively, the applicant provided a Puerto Rican birth certificate with the name J.E.D-O. and a Massachusetts driver's license with the name J.E.D-O.

### 1999 Passport Application

5. In reviewing the 2017 passport application, the Boston Passport Agency discovered that an individual purporting to be J.E.D-O. applied for a U.S. passport in 1999, in Massachusetts. In 1999, the DSS opened an investigation into the 1999 Massachusetts application, but the investigation was closed when the applicant could not be located.

### 2012 Passport Application

6. I also have learned that an individual representing himself to be J.E.D-O. executed a Form DS-11, Application for a U.S. Passport, in San Juan, Puerto Rico on October 5, 2012 (the "2012 applicant"). As proof of identity, the 2012 applicant provided a government issued Puerto Rico Electoral Identification Card and a Transportation Worker Identification Card issued by the Transportation Security Administration. As proof of citizenship, the 2012 applicant provided a Puerto Rico birth certificate. Both documents were in the J.E.D-O. identity.

7. Due to the existence of the 1999 passport application, the Passport Agency requested additional information. The 2012 applicant completed and returned a Supplemental Information Worksheet providing the names, dates of birth, and places of birth for his father, mother, brother and two sisters.

8. A check by the Passport Agency showed that the 2012 applicant's mother and sisters had U.S. passports and the permanent and physical address listed for all of those

applications was 721 Carrion Maduro, San Juan, Puerto Rico 00909. The 2012 applicant listed his address as 719 Carrion Maduro. The mother's passport application listed her mother, C.M.D.O., as an emergency contact with the same address as the 2012 applicant.

9.    On January 3, 2017, I participated in a call to C.M.D.O., grandmother of the 2012 applicant. C.M.D.O. stated that her daughter, mother of the 2012 applicant, was in Florida. On that same date, I also participated in a call to M.M.O.D., the mother of the 2012 applicant, who said she was in Miami, Florida. She also said that her son has never lived in Boston and she sent me a text message photograph of her son, J.E.D-O.

10.   I compared the photo that she sent with the photographs from the 1999, 2012, and 2017 passport applications, all submitted in the same name J.E.D-O. The photograph of the person she identified as her son matches the photograph submitted with the 2012 passport application. The photos submitted with the 1999 and 2017 applications appear to be of the same person and do not match the photograph of the true J.E.D-O. I believe that the 2012 applicant is the true J.E.D-O. and that the 1999 and 2017 applicant is an imposter.

11.   On or about January 3, 2018, Special Agent Catherine Vatikiotis, returned the purported J.E.D-O.'s telephone inquiry into the status of the passport for the 2017 application. During the telephone call, the purported J.E.D-O. was asked whether he applied for a U.S. passport in 1999, to which he answered in the affirmative. The purported J.E.D-O. stated that he was willing to come into the Boston Passport Agency to discuss his application and a meeting was scheduled for January 8, 2018.

### Interview of Purported J.E.D-O.

12.   On January 8, 2018, SSA Jeffery and I interviewed the purported J.E.D-O. He provided a Massachusetts driver's license as proof of identity. The Massachusetts driver's license,

which was in the name J.E.D-O. and contained a photograph of the purported J.E.D-O., matched the driver's license number that was presented to the U.S. postal clerk as proof of identity on the Form DS-11 in October 2017. The purported J.E.D-O. also presented a Puerto Rico birth certificate in the J.E.D-O. identity, a social security card in the identity of J.E.D-O. and a Commonwealth of Massachusetts Department of Corrections Inmate Identification Card in the identity of J.E.D-O. The number on the social security card matched the social security number provided on Form DS-11 filed in October 2017.

13. The purported J.E.D-O. identified photocopies of both the 1999 Form DS-11 and 2017 Form DS-11 as his and initialed each Form DS-11 affirming that he had in fact executed each application.

14. During the interview, the purported J.E.D-O. stated that his name was J.E.D-O. and that he was born in Puerto Rico on xx-xx-1980. The purported J.E.D-O. provided the name of his purported mother and father, but indicated that he had not spoken to them in over 15 years. The purported J.E.D-O. stated he did not know how to get in touch with them or where they were located. The purported J.E.D-O. stated that he had two sisters, Maria and Mercedes, whom he had not spoken to in over 15 years and he did not know where they were or how to get in touch with them. The purported J.E.D-O. stated that he could not write in English or Spanish, and asked that SSA Jeffery write out his sworn statement and that he would sign. SSA Jeffery prepared a sworn statement for the purported J.E.D-O containing the information provided by the purported J.E.D-O. during the interview. The interview was video-recorded.

15. After the purported J.E.D-O. signed the sworn statement, SSA Jeffery and I told him that we did not believe he was J.E.D-O. I also told him that I had spoken to the true J.E.D-O.'s mother. The purported J.E.D-O. produced a decree of temporary guardianship executed in

1997, declaring H.V. temporary guardianship over J.E.D-O. At this point, SSA Jeffery told the purported J.E.D-O. that he was not free to leave, due to an outstanding warrant, and proceeded to read the purported J.E.D-O. his advisement of rights. The purported J.E.D-O. voluntarily signed a waiver of rights and continued the interview.

16.     SSA Jeffery told the purported J.E.D-O. that he should be truthful and that SSA Jeffery would let the U.S. Attorney's Office know he was truthful and cooperated or the purported J.E.D-O. could continue to be deceitful and SSA Jeffery would let the U.S. Attorney's Office know that he had continued not to cooperate.

17.     At that time, the purported J.E.D-O. stated that his true name was Nene Feliz, that he was a citizen of Haiti, that he was born in Haiti around 1982 or 1983, and that his parents were Ponni and Emelis Feliz. The purported J.E.D-O. stated he came to the United States in approximately 1992 and was given the name Ortega to use by a family friend, "Titi," who brought him to the United States. The purported J.E.D-O. stated that "Titi" died in Port-Au-Prince around 1994 or 1995 and, after spending approximately two years living alone, he was cared for by HV, of Worcester, Massachusetts. The purported J.E.D-O. provided us with a copy of a Massachusetts Probate and Family Court Decree of Temporary Guardianship of a Minor granting custody of him to HV on June 5, 1997.

18.     Based on the preceding information, I believe that probable cause exists to conclude that on or about October 22, 2017, in Boston, Massachusetts, John Doe, a.k.a. "Nene Feliz," willfully and knowingly submitted a U.S. Passport Application with the name and biographical information that he knew belonged to another with intent to induce and secure issuance of a U.S. passport under the authority of the United States for his own use, in violation of 18 U.S.C. § 1542.

_[signature]_
MATTHEW J. GODWIN
Special Agent
U.S. Department of State
Diplomatic Security Service

Subscribed and sworn to before me this <u>15TH</u> day of February, 2018 in Boston, MA.

_[signature]_
DAVID H. HENNESSY
United States Magistrate Judge